* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. On all relevant dates the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On all relevant dates an employee-employer relationship existed between plaintiff-employee and defendant-employer.
3. On all relevant dates, defendant-employer was self-insured, and claims were administered by a third-party administrator, Key Risk Management Services.
4. Plaintiff's average weekly wage will be determined from an Industrial Commission Form 22 Wage Chart to be provided by the defendants with supporting wage information.
5. At the hearing, the parties submitted the following:
 a. A Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2);
 b. A Packet of Industrial Commission Forms, which was admitted into the record, and marked as Stipulated Exhibit (3);
 c. A Packet of Arrest Records, which was admitted into the record, and marked as Stipulated Exhibit (4); and,
 d. A Packet of Surveillance Video Photographs, which was admitted into the record, and marked as Stipulated Exhibit (5).
 6. The issues to be determined are as follows *Page 3 
 a. Whether plaintiff sustained a compensable injury on 7 February 2005 and, if so, to what indemnity or medical compensation, if any, he is entitled; and,
 b. Whether plaintiff is entitled to the award of attorney's fess pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based on the foregoing Stipulations and the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was thirty-five (35) years of age with his date of birth being 10 January 1971. Plaintiff is a high school graduate. Prior to working for defendant-employer, plaintiff worked for a produce company lifting produce and driving trucks, and his work history consists of jobs in production plants.
2. Plaintiff began working with defendant-employer through a temporary employment agency in 1999 as a service person. In that capacity, plaintiff's duties involved doffing or hanging warps, driving a forklift, and pulling yarn for the machines. Plaintiff's doffing duties required the use of a jack to move rolls of cloth he estimated to weigh approximately two thousand (2,000) pounds to machines and then the hanging of the cloth on the machines for production. Plaintiff testified that his job required him to push, pull, and lift on a regular basis and that he normally worked from 7:00 a.m. to 3:00 p.m. Plaintiff additionally testified that he generally worked alone. *Page 4 
3. On 7 February 2005, plaintiff was performing his doffing duties and was bending over, pulling on some cloth, when he asserts that he experienced the onset of a burning type pain in his right side beginning in his toes and going up into his back. Plaintiff testified that he informed a co-worker, Mr. Art Dillon, of his injury and then reported to defendant-employer's nurses' station.
4. At the nurses' station, plaintiff was examined by the plant nurse, Ms. Sharon Price. Records from the nurses' station indicate that plaintiff reported experiencing the onset of a burning type pain that radiated down his right leg into his foot and that his right leg was swollen. Plaintiff declined to seek further medical treatment at that time and was given Ibuprofen and an ice pack for his back. He was instructed to go home and call back if his pain worsened.
5. Mr. Ernest Houston, plaintiff's supervisor, testified that on 7 February 2005 plaintiff informed him that he had injured his back while bending over, pulling on cloth.
6. Defendants initially accepted without prejudice plaintiff's report of the incident and initially provided medical care for plaintiff.
7. On 8 February 2005, plaintiff reported to work and then was referred to Wallace Urgent Care where he was examined by Dr. Kames Maultsby. To Dr. Maultsby, plaintiff reported having injured his back the day prior at work, and that the level of his pain was eight out of ten. Dr. Maultsby injected plaintiff with Toradol, a muscle relaxer, and Kenalog, and provided prescriptions for Naprosyn, an anti-inflammatory, and Skelaxin, another muscle relaxer. Dr. Maultsby also referred plaintiff to physical therapy and instructed him to work half days and to return in three days on 11 February 2005. At his deposition, Dr. Maultsby testified that Toradol was not narcotic in its effect and is not known to have any psychotic side effects. *Page 5 
8. Due to apparent communication issues, plaintiff went to a different physical therapy provider than had been initially authorized by defendant. Telephonic conversations then took place between Ms. Price, Dr. Maultsby, and Pigford Physical Therapy for authorization for therapy.
9. According to statements in arrest records by Ms. April Glaspie, plaintiff's wife, on 10 February 2005, plaintiff came to their marital home and broke furniture and other items. On 11 February 2005, plaintiff returned to the marital home and kicked in the front door. Plaintiff was then arrested and incarcerated for two days. The Deputy Commissioner noted, and the Full Commission agrees, that it is relevant in this matter that plaintiff could recall with great detail certain aspects related to his alleged injury, but could not recall in any respect these domestic violence incidents or being arrested. Specifically, when asked if he remembered being arrested for domestic violence, plaintiff testified that he "can't remember everything." Moreover, plaintiff mainly attributed this lack of memory to having been on the prescription medicine Percocet at the time of these incidents. However, there is no credible evidence of record that plaintiff was prescribed Percocet any more recently than a year prior to 7 February 2005.
10. On 14 February 2005, following his release from jail, plaintiff reported to Duplin General Hospital. Plaintiff was able to recall reporting to this Duplin General Hospital. Thereafter, plaintiff reported to defendant-employer's facility and met with Nurse Price, who testified that the first time she saw plaintiff after 13 February 2005, he was on crutches. Regarding this, plaintiff initially testified that he began using crutches possibly on 9 February or 10 February 2005 and that the crutches had been given to him by a physician. Plaintiff later testified that, prior to 13 February 2005, he had only been provided a muscle relaxer and an anti-inflammatory *Page 6 
medication. There is no credible evidence of record that plaintiff was provided with the crutches in question by anyone at Duplin General Hospital.
11. According to Mr. Ernest Houston, prior to the incidents of domestic violence in February 2005, plaintiff had remarked that he needed time off work to attend to some family problems, but that he could not afford to take the time off without pay.
12. Subsequent to 7 February 2005, plaintiff worked his assigned part-time duty hours sporadically until 18 February 2005. Thereafter, plaintiff did not return to work for defendant-employer in any capacity and defendant lost track of him due in large part to plaintiff having changed his address and no longer having a telephone number through which he could be reached.
13. Defendant formally denied plaintiff's claim on 18 February 2005.
14. In April 2005, plaintiff was treated at Duplin General Hospital for a hiatal hernia and a large kidney stone, conditions unrelated to his alleged on-the-job injury. In July 2005, plaintiff was injured in a fall while playing basketball, in which he dislocated his elbow. On that occasion, plaintiff was treated by Dr. Maultsby, whose records contain no reports of back pain. Additionally, physicians who were asked about plaintiff's participation in a basketball game have expressed the opinion that such an activity is inconsistent with his reported symptoms.
15. On the issue of causation, Dr. Maultsby was unable to render an opinion given that he could not make any objective findings regarding the alleged injury to plaintiff's back.
16. Dr. Max R. Kasselt, to whom plaintiff was referred by Dr. Maultsby, found no evidence of an aggravation of plaintiff's lumbar disk degeneration and declined to relate plaintiff's reports of pain to any work-related injury. Moreover, Dr. Kasselt opined that plaintiff's kidney stone was a much more likely cause of the pain symptoms plaintiff reported. *Page 7 
17. Dr. Donald Getz, who conducted an Independent Medical Examination, has testified that he did not find it possible to determine whether plaintiff's complaints were legitimate or not, due to the degree of symptom magnification and nonobjective findings.
18. Plaintiff has also sought treatment for his back from his family physician, Dr. Felipe Masquil. Dr. Masquil's records do reflect that plaintiff consistently reported back pain that plaintiff attributed to a workplace injury. However, Dr. Masquil's causation opinions are insufficient to establish that the pain symptoms reported by plaintiff, or any change in the condition of his back subsequent to 7 February 2005, were related to his employment with defendant-employer.
19. There is insufficient credible evidence of record upon which to find that plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident or otherwise on or about 7 February 2005.
20. Defendant's actions in defense of this matter were reasonable.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. There is insufficient credible evidence of record upon which to find and conclude that plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident or otherwise on or about 7 February 2005. N.C. Gen. Stat. § 97-2(6). *Page 8 
2. Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act. Id.
3. Because there is no evidence of record upon which to find that defendant's actions in defense of this matter were not reasonable, plaintiff is not entitled to the award of attorney's fees as a sanction pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 A W A R D
1. Under the law, plaintiff's claim for workers' compensation benefits must be, and is HEREBY DENIED.
2. Each party shall bear its own costs.
This the ___ day of October 2007.
S/_____________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_________________ PAMELA T. YOUNG CHAIR
S/_____________________ DANNY LEE McDONALD COMMISSIONER *Page 1